# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Encompass Pet Group, LLC, d/b/a
SmartPetLove and Snuggle Pet
Products, LLC,

           Plaintiff,

v.

Allstar Products Group, LLC, and
Allstar Marketing Group, LLC,

           Defendant.

_____/

Case No. 21-12884

Hon.

MILLER, CANFIELD, PADDOCK
   and STONE, P.L.C.
A. Michael Palizzi (P47262)
Kimberly A. Berger (P56165)
Anita C. Marinelli (P81986)
Palizzi@millercanfield.com
Berger@millercanfield.com
Marinelli@millercanfield.com
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
*Attorneys for Plaintiff*_____/

## COMPLAINT

Plaintiff Encompass Pet Group, LLC, d/b/a SmartPetLove and Snuggle Pet Products, LLC ("Plaintiff" or "Encompass") for its Complaint against Defendants Allstar Marketing Group, LLC ("Allstar Marketing") and Allstar Products Group, LLC ("Allstar Products") (collectively "Defendants"), by and through its undersigned counsel, respectfully states as follows:

## NATURE OF THE ACTION

1.      This lawsuit arises out of Defendants' unfair competition and blatant infringement and copying of Plaintiff's intellectual property related to Plaintiff's highly successfully SNUGGLE PUPPY® pet toy, a stuffed dog toy that helps ease loneliness, fear, and anxiety in dogs naturally by simulating the heartbeat and heat of other dogs.

2.      Recognizing the success and goodwill that Plaintiff has built over twenty years, and in a brazen and improper attempt to capitalize on that success, Defendants have begun selling a stuffed dog toy that also simulates the heartbeat and heat of other dogs. Defendants designed their product to look confusingly similar to the SNUGGLE PUPPY® product, packaged it in confusingly similar packaging, and used confusingly similar and identical trademarks, all without authorization from Plaintiff.

3.      Defendants' conduct is causing, and unless enjoined, will continue to cause, irreparable harm to Plaintiff. Defendants should not be permitted to continue to exploit Plaintiff's original artistic work, trademarks, and trade dress to sell its look-alike products to the public. Defendants' conduct must be stopped and Plaintiff must be compensated for Defendants' willful acts of infringement and unfair competition.

## THE PARTIES

4.     Plaintiff Encompass Pet Group, LLC, d/b/a SmartPetLove and Snuggle Pet Products, LLC, is a Florida limited liability company located at 2050 51st Avenue E. #100, Palmetto, Florida 34221 and 41180 Vincenti Court, Novi, Michigan 48375.

5.     Defendant Allstar Marketing Group, LLC is a New York limited liability company with its principal place of business at 2 Skyline Drive, Hawthorne, New York 10532.

6.     Defendant Allstar Products Group, LLC is a New York limited liability company with its principal place of business at 2 Skyline Drive, Hawthorne, New York 10532.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 15 U.S.C § 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C § 1367, which are integrally interrelated to Plaintiff's federal claims, arise from a common nucleus of operative facts, and determination of the state claims with the federal claims furthers judicial economy.

8.     This Court has personal jurisdiction over Defendants because Defendants have the requisite minimum contacts within this State and this District; Defendants purposefully availed themselves of the privilege of conducting

business in this State and this District; Defendants regularly conduct and/or solicit business within this State and this District; Defendants advertise and sell infringing products in this State and this District; and Plaintiff's causes of action arise directly from Defendants' activities in this State and this District.

9.      Venue in this Court is proper under 28 U.S.C § 1391. Defendants have transacted business in this District, and have directly or indirectly committed or induced acts of copyright, trademark, and trade dress infringement in this district.

## FACTS GIVING RISE TO THIS ACTION

### A.      The SNUGGLE PUPPY® Product

10.     Encompass is an industry-leading manufacturer and innovator of pet toys, animal harnesses, and other pet products. Since its establishment, the company has focused on its top quality and innovative design for pet products.

11.     One of Encompass' flagship products is the innovative SNUGGLE PUPPY® pet toy that it developed over twenty years ago as a natural, holistic solution to help ease loneliness, fear, and anxiety in dogs naturally by simulating the heartbeat and heat of dogs.

12.     The SNUGGLE PUPPY® product is available throughout the United States on Encompass' website,[1] at major pet retailers like PetSmart and Petco,[2]

---

[1]  www.snugglepuppy.com/

[2]  www.petco.com/shop/en/petcostore/product/smartpetlove-snuggle-puppy-behavioral-aid-brown-toy; www.petsmart.com/dog/dental-care-and-

various online marketplaces like Amazon and Chewy,[3] and hundreds of independent pet retailers nationwide.

13.   Encompass is the owner of all intellectual property rights relating to the SNUGGLE PUPPY® product and its packaging, including trademarks, copyright, trade dress, and patents.

14.   Encompass has spent substantial amounts of time, money, and effort in developing, producing, and marketing its products, and has spent a great deal of time creating and protecting its intellectual property. Encompass has also invested significant resources in the SNUGGLE PUPPY® product's design, shape, size, color, appearance, and packaging.

15.   The SNUGGLE PUPPY® product has achieved great success and immense popularity since its introduction into the marketplace more than two decades ago.

16.   The SNUGGLE PUPPY® product has been positively featured in Modern Dog Magazine, People Magazine, USA Today, NBC News, The Dodo, Marie Claire, Buzzfeed.com, Rover.com, and many more.[4]

---

wellness/treatments/smart-pet-love-snuggle-puppyandtrade-behavioral-aid-dog-toy-41743.html

[3] www.amazon.com/SmartPetLove-Snuggle-Puppy-Behavioral-Brown/dp/B0722XGRMB?th=1; www.chewy.com/smart-pet-love-snuggle-puppy/dp/135565

[4] www.snugglepuppy.com/pages/news

17.   Essential to its efforts to market, advertise, distribute, and sell the SNUGGLE PUPPY® product, Encompass designed and developed (1) an original and innovative product; (2) original product packaging, product graphics, and instructions that accompany each product; (3) product advertising; and (4) the SNUGGLE PUPPY® website that contains extensive product photographs, graphics, instructions, and product descriptions.

18.   Encompass has invested substantial resources in the design, creation, and development of its product, packaging, advertising, and promotional materials, including hiring graphic artists and designers to create the product, packaging, inserts and instructions, and advertising under Encompass' direction.

19.   Encompass has also taken extensive efforts to advertise, promote, and market the SNUGGLE PUPPY® product. Encompass promoted and publicized the SNUGGLE PUPPY® product on its websites[5], Facebook[6], Instagram[7], TikTok[8], and Pinterest.[9] Encompass also promotes the SNUGGLE PUPPY® product using digital marketing through Amazon, Google, and Chewy.

---

[5] www.smartpetlove.com/; www.snugglepuppy.com/
[6] www.facebook.com/OriginalSnugglePuppy
[7] www.instagram.com/OriginalSnugglePuppy
[8] www.tiktok.com/@originalsnugglepuppy
[9] www.pinterest.com/originalsnugglepuppy/

20.    The SNUGGLE PUPPY® product has also been positively featured and promoted by prominent social media influencers and celebrities with millions of followers.

21.    As a result, the SNUGGLE PUPPY® product has been consistently ranked as Amazon's #1 Best Seller for Plush Dog Toys and receives rave reviews.

**B.    Encompass' Trade Dress**

22.    Encompass has long been engaged in interstate commerce by the ongoing sale and merchandising of the distinctive SNUGGLE PUPPY® product.

23.    Encompass has acquired trade dress rights in the SNUGGLE PUPPY® product, including the inherently unique, distinctive, and non-functional design of the product that it has used since at least 1997.

24.    Encompass has also acquired trade dress rights in its packaging for the SNUGGLE PUPPY® product, including the inherently unique, inherently distinctive, and non-functional arrangement of its packaging that it has used since at least 2013.

25.    Encompass' product trade dress and packaging trade dress have developed secondary meaning and are recognized in the marketplace. Thus, the public associates both the product and packaging trade dress with Encompass' SNUGGLE PUPPY® product.

26.   Encompass has invested substantially in the design, development, manufacture, and marketing of both the SNUGGLE PUPPY® product and its packaging. Encompass has spent considerable resources to develop the goodwill associated with its SNUGGLE PUPPY® product and its associated intellectual property. As a result, it has substantial economic value and the potential to acquire much more economic value.

27.   Encompass has promoted the SNUGGLE PUPPY® product through various media, retail pet stores, consumer outlets, and online, all of which have acted to build the goodwill of the business of Encompass in the SNUGGLE PUPPY® product and increase recognizability of the SNUGGLE PUPPY® product and its trade dress. By these actions, the distinctive trade dress of the SNUGGLE PUPPY® product and its packaging, have come to be associated with Encompass as the source of the SNUGGLE PUPPY® product.

28.   Encompass has trade dress rights in the design, style, and appearance of the SNUGGLE PUPPY® product, including a stuffed toy in the shape of a puppy with a flat back with two floppy ears, two closed eyes on the front of the face with arched eyebrows on top, a large oval nose on the front of the snout, and a short tail extending from the rear of the dog.

29.   Encompass has also acquired trade dress rights in its SNUGGLE PUPPY® packaging. Each SNUGGLE PUPPY® product is packaged in an open-

top box with a blue back panel that extends above the opening and bears the product name. The front of the box bears an image of the product laying near a real sleeping dog. The phrases "real-feel pulsing heartbeat" and "physical warmth" are on the left side of the front of the box. The bottom right corner of the front of the box displays "calms fear, loneliness, and separation anxiety" contained in a red circle with white letters. The product is positioned in the open-top box with its front arms extending up and out of the open top.

30.    None of the features of Encompass' product trade dress or packaging trade dress are required for the use of the SNUGGLE PUPPY® product.

31.    As a result of Encompass' exclusive, continuous, and substantial use, advertising, and sales of the SNUGGLE PUPPY® product and packaging and the public attention that have been paid, Encompass' product and packaging trade dress have become well known to or famous in the market and have acquired valuable goodwill and secondary meaning in the marketplace as consumers have come to uniquely associate the product design and packaging with Encompass as a source identifier.

32.    Plaintiff's products are inherently distinctive and have acquired distinctiveness through substantial sales of over two decades, national advertising and acclaim, and advertising.

## C.      Encompass' Trademarks

33.    Encompass owns both registered and unregistered trademarks that it has continuously used to promote and market the SNUGGLE PUPPY® product including, but not limited to, SNUGGLE PUPPY® (USPTO Reg. No. 6099566) and REAL-FEEL HEARTBEAT® (USPTO Reg. No. 6314376) (collectively the "Marks"). *See* Exhibit A - Trademark Registrations.

34.    Encompass has acquired ownership of these Marks by adopting and continuously using these Marks so that the public and industry associates these marks with Encompass' SNUGGLE PUPPY® product.

35.    Encompass has been using the SNUGGLE PUPPY® mark in commerce for over twenty years and the REAL-FEEL HEARTBEAT® mark for almost ten years.

36.    Consumers have come to look for these Marks as a hallmark of Encompass' quality products.

## D.      Encompass' Copyrights

37.    Encompass has protected its valuable rights by filing for and obtaining U.S. Copyright Registrations in and relating to the SNUGGLE PUPPY® products.

38.    Encompass owns U.S. Copyright Registration Nos. VA0002216872 and VA0001959759 (collectively "Artwork"). *See* Exhibit B - Copyright Registrations.

E.     **Defendants' Knock-Off Product**

39.    In early 2021, Encompass became aware that Defendants were selling a substantially similar knock-off pet product that it was calling the "Huggie Pup."

40.    Defendants designed their "Huggie Pup" product, product packaging, and advertising to be confusingly similar to, and unfairly compete with, Encompass's SNUGGLE PUPPY®.

41.    Defendants also have marketed the "Huggie Pup" with product instructions, product descriptions, and advertising and promotional materials that are substantially similar to that of Encompass' product.

42.    The "Huggie Pup" products are substantially similar in appearance to the SNUGGLE PUPPY® and is likely to cause confusion, mistake, or deception.

43.    The "Huggie Pup" products are also packaged in packaging substantially similar to the SNUGGLE PUPPY® packaging and is likely to cause confusion, mistake, or deception.

44.    Defendants selected the name "Huggie Pup", which is confusingly similar to Encompass' SNUGGLE PUPPY® mark and is likely to cause confusion in the marketplace.

45.    Encompass uses a blue color as a predominant color on its packaging. Defendants use a substantially similar blue color on their packaging for the "Huggie Pup."

46.     Encompass has an image of the SNUGGLE PUPPY® product beside a sleeping dog on the front of its packaging. Defendants' "Huggie Pup" packaging also has a sleeping dog on the front of its packaging.

47.     Encompass uses REAL-FEEL HEARBEAT® and REAL-FEEL PULSING HEARTBEAT on its SNUGGLE PUPPY® packaging. Defendants also use "Real-Feel Heartbeat" and "Real-Feel Pulsing Heartbeat" on its packaging and in advertisements for its "Huggie Pup" product.

48.     The SNUGGLE PUPPY® product is positioned in the packaging so that the arms extend upward as if to suggest it should be picked up. Defendants' "Huggie Pup" is arranged in its packaging similarly.

49.     The following picture shows Defendants' "Huggie Pup" and Encompass' SNUGGLE PUPPY® product and packaging.



50. Because of the similarities between the products themselves, the names of the products, and/or the product packaging, a consumer who purchases Defendants' "Huggie Pup" is likely to be confused into believing it is purchasing a product from the same source as the SNUGGLE PUPPY® product.

51. Defendants sell their infringing "Huggie Pup" through their www.huggiepup.com website[10], Bed Bath & Beyond[11] (both online and in stores across the U.S., including in this District), Walmart[12] (both online and in stores across the U.S., including in this District), Chewy[13], and Amazon[14]. *See* Exhibit C - Offers for Sale.

52. Defendants do not have any license, authorization, permission, or consent to use Encompass' intellectual property, including Encompass' Artwork, Marks, or trade dress.

53. Defendants are selling copies or colorable imitations in interstate commerce of the SNUGGLE PUPPY® product in a similar packaging using a name that is confusingly similar causing confusion, mistake, or deception.

---

[10] www.huggiepup.com

[11] https://www.bedbathandbeyond.ca/store/product/huggie-pup-by-pets-know-best-comforting-dog-toy-in-golden/5619276

[12] https://www.walmart.com/ip/Huggie-Pup-EA/687989676

[13] https://www.chewy.com/pets-know-best-huggiepup-plush-dog/dp/338034

[14] https://www.amazon.com/HuggiePup-Pets-Know-Behavioral-Golden/dp/B095QJRSYF/

54.   Given the striking similarity between the two products, their respective packaging, their respective names, and the trademarks Defendants used, it is apparent that Defendants' copied the SNUGGLE PUPPY® product and packaging.

55.   Defendants have caused confusion in the market, and they have been trading off the goodwill of the SNUGGLE PUPPY® product.

56.   Customers, potential customers, and others in the pet product industry are likely to, and have been, confused because the products and their respective packaging are substantially similar.

57.   For example, in a review solicited by Defendants, one customer confused Defendants' "Huggie Pup" with Encompass' SNUGGLE PUPPY® product writing: "Our new baby Oreo loves her Snuggle Puppy. She sleeps with it every night. In the morning after breakfast she gets Snuggles out for the day. We have our second baby Tinkerbelle and his Snuggle Puppy is waiting for him on the bed." *See* Exhibit D – Customer Review.

58.   Then, Defendants took that review from the obviously confused customer and used it to promote their infringing "Huggie Pup" product.[15]

---

[15] www.bedbathandbeyond.com/store/product/huggie-pup-by-pets-know-best-comforting-dog-toy-in-golden/5619276?brandId=5434

59.    Upon information and belief, Defendants were aware of Encompass' SNUGGLE PUPPY® when Defendants designed the "Huggie Pup."

60.    Upon information and belief, Defendants were aware of  Encompass' SNUGGLE PUPPY® packaging when Defendants designed the "Huggie Pup" packaging.

61.    Upon information and belief, Defendants designed the "Huggie Pup" product to look similar to Encompass' SNUGGLE PUPPY® product.

62.    Upon information and belief, Defendants designed the "Huggie Pup" packaging to look similar to Encompass' SNUGGLE PUPPY® product.

63.    That Defendants copied Encompass' product, packaging, name, and trademarks was not a coincidence and cannot be justified; and its only purpose is to create confusion in the marketplace and improperly trade off of and leverage the reputation and goodwill of Encompass' business.

64.    Defendants have copied the design and trade dress of the SNUGGLE PUPPY® product and packaging. Defendants have used Encompass' trade dress, trademarks, and copyrights to unfairly and quickly build its business in the market.

65.    Defendants' copying clearly demonstrates a continuing intent to deceive the consumer and exploit the reputation of the company—Encompass—that was the first to market.

66.   Moreover, Defendants' advertising affirmatively represents that the "Huggie Pup" is "The World's First Plush Pet toy with a Heart" in a video displayed on its website as shown in the screenshot below. The narration accompanying the video makes the same material statement of fact.



## COUNT I
## TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT
## (15 U.S.C § 1125)

67.   Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

68.   Plaintiff has regularly used its trade dress in commerce, to identify its products and associate those products with Plaintiff and Plaintiff's goodwill and reputation.

69.   Plaintiff's product trade dress and packaging trade dress are inherently distinctive and have achieved secondary meaning, and include the unique and non-functional design elements shown and described above.

70.   The SNUGGLE PUPPY® product has furthermore developed secondary meaning for the trade dress as consumers look for the trade dress and

associate it with the Plaintiff as a result of Plaintiff's advertising and sales for more than two decades. Defendants' copying of Plaintiff's product and packaging trade dress also demonstrates the secondary meaning associated with the products at issue.

71.    Defendants' use of Plaintiff's product and packaging trade dress to promote, market, or sell their goods in direct competition with Plaintiff's products constitutes trade dress infringement under 15 U.S.C § 1125(a).

72.    Defendants' use of the trade dress is likely to cause confusion, mistake, and deception among customers.

73.    Defendants have direct and full knowledge of Plaintiff's prior use of and rights in the trade dress before the acts complained of herein. The knowing, intentional, and willful nature of the acts renders this an exceptional case under 15 U.S.C § 1117(a).

74.    As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of infringement by Defendants harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

75.    As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, and irreparable

injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to engage in the unlawful acts by infringing Plaintiff's trade dress. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**COUNT II**

**TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**
**(15 U.S.C § 1114)**

76.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

77.    Defendants' have adopted and continue to use in commerce marks identical to or confusingly similar to Plaintiff's Marks, with full knowledge of Plaintiff's superior rights, and with full knowledge that their infringing use of Plaintiff's Marks was intended to cause confusion, mistake, and/or deception.

78.    Defendants have infringed and continue to infringe Plaintiff's SNUGGLE PUPPY® mark (USPTO Reg. No. 6099566) by using a mark in commerce, "Huggie Pup," that is likely to cause confusion, or cause mistake or deceive and/or selling, offering for sale, distributing, and/or advertising products bearing a mark likely to cause confusion, or cause mistake or deceive as to their origin.

79.    Defendants have infringed and continue to infringe Plaintiff's REAL-

FEEL HEARTBEAT® mark (USPTO Reg. No. 6314376) by using marks in commerce, "real-feel pulsing heartbeat" and "real-feel heartbeat," that are likely to cause confusion, or cause mistake or deceive and/or selling, offering for sale, distributing, and/or advertising products bearing marks likely to cause confusion, or cause mistake or deceive as to their origin.

80.   The knowing, intentional, and willful nature of the acts renders this an exceptional case under 15 U.S.C § 1117(a).

81.   As a direct and proximate result of said infringement by Defendants, Plaintiff has sustained, and will continue to sustain damages in an amount to be proven at trial. Plaintiff is also entitled to Defendants' profits attributable to the infringement and is also entitled to its attorney fees and costs as according to law.

82.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's Marks. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT III
## TRADE DRESS DILUTION UNDER THE LANHAM ACT
## (15 U.S.C § 1125)

83.   Plaintiff repeats and realleges, as if fully set forth herein, each and

every allegation contained in the paragraphs above.

84.   Plaintiff has regularly used its trade dress in commerce, to identify its products and associate those products with the Plaintiff and Plaintiff's goodwill and reputation. Plaintiff's product trade dress and packaging trade dress are inherently distinctive and have achieved secondary meaning, and includes the unique and non-functional design elements shown above.

85.   As a result of Plaintiff's advertising and sales for more than two decades, the SNUGGLE PUPPY® product and packaging has developed secondary meaning for the trade dress as consumers look for the trade dress and associate it with the Plaintiff. The copying of Plaintiff's product and packaging trade dress also demonstrates the secondary meaning associated with the products at issue.

86.   Plaintiff's product and packaging trade dress are widely recognized by the public and has acquired fame throughout the United States, entitling it to protection from dilution.

87.   Defendants' use of Plaintiff's product and/or packaging trade dress began after Plaintiff's product and packaging trade dress became distinctive and famous.

88.   Defendants' use of Plaintiff's product and/or packaging trade dress without authorization from Plaintiff, is likely to dilute and distinctive quality of the

trade dress, to decrease the capacity of the trade dress to identify and distinguish Plaintiff's SNUGGLE PUPPY® product, and to cause harm to Plaintiff's business reputation.

89.     The acts of Defendants as alleged above were intentional, willful, with bad faith, and with the intention of deceiving and misleading the public and causing harm to Plaintiff, and made with full knowledge of Plaintiff's trade dress rights.

90.     Defendants' acts and conduct complained of herein constitute trade dress dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C § 1125(c).

91.     The knowing, intentional, and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C § 1117(a).

92.     As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of infringement and unfair competition by Defendants harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

93.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to engage in the unlawful acts.

Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT IV
## COPYRIGHT INFRINGEMENT
## (17 U.S.C §§ 101 *et seq* and 501)

94.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

95.    Plaintiff has registered with the United States Copyright Office the Artwork described above. Defendants have deliberately and intentionally copied Plaintiff's Artwork, and in doing so, have infringed Plaintiff's copyrights in violation of the Copyright Act by selling products that are substantially similar to Plaintiff's copyrighted Artwork.

96.    Defendants have infringed and continue to infringe Plaintiff's U.S. Copyright Registration No. VA0002216872 by, *inter alia*, making, using, importing, offering to sell, or selling in the United States, including within this District, products bearing a substantially similar design covered by Plaintiff's registration.

97.    Defendants have infringed and continue to infringe Plaintiff's U.S. Copyright Registration No. VA00019597 by, *inter alia*, making, using, importing, offering to sell, or selling in the United States, including within this District, products bearing a substantially similar design covered by Plaintiff's registration.

98.   As a direct and proximate result of said infringement by Defendants, Plaintiff has sustained, and will continue to sustain damages in an amount to be proven at trial. Plaintiff is also entitled to Defendants' profits attributable to the infringement under 17 U.S.C § 504(b) and otherwise as according to law.

99.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to engage in the infringement. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT V
## UNFAIR COMPETITION/PASSING OFF UNDER THE LANHAM ACT
## (15 U.S.C § 1125)

100.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

101.  Defendants' manufacturing, selling, offering for sale, advertising, and/or shipping of its "Huggie Pup" that competes directly with the SNUGGLE PUPPY® product will likely cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' infringing product in violation of 15 U.S.C § 1125(a).

102.  Upon information and belief, Defendants' unfair competition and

passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill created and enjoyed by Plaintiff for Defendants' profit.

103. Plaintiff's consumer goodwill is of enormous value, and Plaintiff is suffering and will continue to suffer irreparable harm if Defendants' unfair competition and passing off as to the infringing product is allowed to continue.

104. Defendants' unfair competition and passing off has continued and will likely continue unless enjoined by this Court.

105. The knowing, intentional, and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C § 1117(a).

106. As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of infringement and unfair competition by Defendants harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

107. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to engage in the unlawful acts. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT VI
## FALSE ADVERTISING
## <u>(15 U.S.C § 1125)</u>

108.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

109.  In connection with the promotion of its own products, Defendants make and have made statements, at least through their website and advertising, which are either literally false, or in the alternative, if not literally false, are likely to confuse or deceive consumers.

110.  For example, in its advertising, Defendants state the fact that the "Huggie Pup" is "The World's First Plush Pet toy with a Heart."

111.  This statement of material fact is literally false because Encompass' SNUGGLE PUPPY® product, which is a plush pet toy with a heart insert that simulates the beating hearts of other dogs, has been available in the market since at least 1997, long before Defendants' "Huggie Pup" product.

112.  Defendants placed and maintains their false statements on their website on the Internet in interstate commerce. The statements are likely to be viewed by potential customers of Plaintiff.

113.  Plaintiff and Defendants are direct competitors in the market for pet products. Plaintiff has been injured as a result of Defendants' misrepresentations through a diversion of business and/or loss of goodwill associated with Plaintiff's

products.

114. Defendants have made false and misleading statements of fact that are material and likely to influence the purchasing decisions of customers to purchase Defendants' products. Such statements were calculated to and have injured Plaintiff by diverting sales from Plaintiff to Defendants and have caused a loss of goodwill in Plaintiff's products.

115. Defendants' false and misleading advertising have caused and, unless enjoined, will continue to cause: (a) confusion, deception, and mistake among customers whose purchasing decisions are likely to be affected by Defendants' false and misleading claims; (b) Plaintiff to suffer the loss of goodwill, sales, and profits; (c) Defendants to unfairly enjoy sales and profits to which it is not entitled; and (d) irreparable harm to Plaintiff.

116. By its conduct in violation of the Lanham Act, Defendants have unfairly competed with Plaintiff and continue to compete unfairly with Plaintiff.

117. Defendants have willfully and deliberately violated Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a), warranting an award of treble damages and attorney's fees under 15 U.S.C § 1117(a) as this case is exceptional.

118. As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of false advertising by Defendants harmed

Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

119. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this court, Defendants will continue to engage in false advertising. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT VII
## UNFAIR COMPETITION
## (MCL § 445.903)

120. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

121. Defendants, without Plaintiff's authorization, have used and are continuing to use colorable imitations of the SNUGGLE PUPPY® product, a name that is confusingly similar, the same or confusingly similar trademarks, and similar packaging that is intended to cause, has caused, and/or is likely to cause confusion, mistake, or deception among consumers between Defendants' products and Plaintiff's products.

122. Defendants' actions described above constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of Michigan's Consumer Protection Act, MCL § 445.903.

123. Defendants' wrongful acts alleged herein have permitted and/or will permit Defendants to earn substantial revenues and profits on the strength of Plaintiff's extensive advertising, consumer recognition, and the goodwill associated with its SNUGGLE PUPPY® product and packaging.

124. By reason of Defendants' wrongful acts alleged herein, Plaintiff has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendants' products are affiliated with, sponsored by, approved by, or originate from the Plaintiff.

125. As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts unfair competition by Defendants harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

126. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this court, Defendants will continue to engage in unfair competition.

Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT VIII
## UNFAIR COMPETITION
## (MICHIGAN COMMON LAW)

127.  Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the paragraphs above.

128.  By its conduct, Defendants have unfairly competed with Plaintiff and continue to compete unfairly with Plaintiff. Plaintiff has no adequate remedy at law for Defendants' continuing acts of unfair competition.

129.  By reason of Defendants' wrongful acts alleged herein, Plaintiff has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Defendants' products are affiliated with, sponsored by, approved by, or originate from the Plaintiff.

130. As a direct and proximate result of Defendants' acts, Plaintiff has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of unfair competition by Defendants harmed Plaintiff and resulted in substantial unjust profits and unjust enrichment to Defendants.

131. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial and irreparable

injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this court, Defendants will continue to engage in unfair competition. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

a)    Judgment against Defendants and in favor of Plaintiff on all counts;

b)    A determination that Defendants are liable to Plaintiff for copyright infringement under 17 U.S.C § 501;

c)    A determination that Defendants are liable to Plaintiff for trademark infringement under 15 U.S.C § 1117;

d)    A determination that Defendants are liable to Plaintiff for trade dress infringement and/or dilution under 17 U.S.C § 1125;

e)    A determination that Defendants are liable to Plaintiff for unfair competition under MCL § 445.903;

f)    A determination that Defendants are liable to Plaintiff for common law unfair competition under Michigan common law;

g)    An injunction enjoining Defendants and their respective officers, agents, employees, shareholders, directors, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each of any of

them from (a) directly or indirectly infringing in any manner any of Plaintiff's respective copyrights and or other exclusive rights (now in existence or hereinafter created); and (b) causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiff's respective copyrights, trademarks, trade dress, and/or other exclusive rights (whether now in existence or hereinafter created;

h)     Requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiff or destroy its entire inventory of infringing products bearing or infringing the Artwork, trade dress, or a confusingly similar copy thereof;

i)     An award of maximum statutory damages in the amount of $150,000 per work infringed under 17 U.S.C § 504(c), and/or alternatively, Plaintiff's actual damages and the profits of Defendants that are attributable to the violations alleged herein pursuant to 17 U.S.C § 504(b);

j)     An award of damages under 15 U.S.C § 1117 for the Lanham Act violations in an amount equal to (i) Defendants' profits for its false advertising, (ii) damages Plaintiff has sustained due to Defendants' wrongful conduct, and (iii) costs of this action;

k)     An award of Plaintiff's damages trebled plus the costs and attorney fees under 17 U.S.C. § 505 and 15 U.S.C. § 1117(c), and/or alternatively, Plaintiff's actual damages and/or profits of Defendants that are attributable to the violations alleged herein pursuant to 15 U.S.C § 1117(a);

l)      An accounting of Defendants' profits;

m)      A determination that this case is "exceptional," under 15 U.S.C. § 1117(a);

n)      An award of damages adequate to compensate Plaintiff for the actionable conduct of the Defendant, including, subject to the principles of equity, recovery by Plaintiff of (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs and disbursements of this action;

o)      An Order requiring Defendants to remove false and misleading statements and photographs concerning its product from its website and any other locations;

p)      An Order enjoining Defendants from making future false and misleading statements and photographs concerning its product;

q)      An Order cancelling Trademark Serial No. 90671940 should it proceed to registration during the pendency of this lawsuit under 15 U.S.C § 1119;

r)      An award of damages arising from Defendants' unfair competition under common law, punitive damages, and attorney's fees to the extent permitted by law;

s)      An award of interest, including prejudgment interest on the foregoing sums; and

t)      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. Pro. 38(B) and 5(D), Plaintiff demands a jury trial

of all issues triable by jury.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.


By:  s/A. Michael Palizzi
     A. Michael Palizzi (P47262)
     Kimberly A. Berger (P56165)
     Anita C. Marinelli (P81986)
     Palizzi@millercanfield.com
     Berger@millercanfield.com
     Marinelli@millercanfield.com
     150 West Jefferson, Suite 2500
     Detroit, Michigan  48226

     *Attorneys for Plaintiff*

Dated: December 9, 2021

38330731.13/155986.00006