UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ENCOMPASS PET GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTAR PRODUCTS GROUP, LLC, *et al*.,<br><br>Defendants. | Case No. 21-12884<br>Honorable Nancy G. Edmunds<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER STRIKING EXHIBITS; DENYING MOTIONS TO COMPEL AND FOR A PROTECTIVE ORDER;
AND DENYING MOTION TO SEAL
[ECF NOS. 26, 28-31, 34-35]**

## I.    Introduction

Encompass Pet Group, LLC, d/b/a SmartPetLove and Snuggle Pet Products, LLC, sues Allstar Products Group, LLC, and Allstar Marketing Group, LLC, for trade dress infringement and dilution, unfair competition, copyright infringement, and unfair competition under 15 U.S.C. § 1125, 17 U.S.C. §§ 101 *et seq*. and 501, and Michigan common law. ECF No. 1. One of Encompass's "flagship" products is the "Snuggle Puppy," a plush toy that looks like a puppy and has features designed to calm pets,

including a "'Real-Feel Pulsing Heartbeat." *Id*. Encompass claims that Allstar's "Huggie Pup" is a knock-off of the Snuggle Puppy. *Id*.

Allstar moved to compel answers to interrogatories and for a protective order, and the Honorable Nancy G. Edmunds referred both motions to the undersigned. ECF No. 26; ECF No. 28; ECF No. 29; ECF No. 30; ECF No. 31; ECF No. 32; ECF No. 33. Encompass moved to seal its response brief because a protective order required it to do so; that motion was also referred to the undersigned. ECF No. 34; ECF No. 35; ECF No. 37. After the parties engaged in a court-ordered meet and confer, they filed a list of unresolved issues. ECF No. 39; ECF No. 46. After a hearing on January 9, 2023, the Court denies Allstar's motions, denies Encompass's motion to seal its response, and strikes Allstar's exhibits to its motion for protective order.

## II.     Motion to Compel

### A.

Under the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court's meet and confer order directed the parties to address the relevance and proportionality of the requested discovery in

their statement of unresolved issues. ECF No. 39, PageID.1602-1603. But neither party followed that directive in their joint statement of unresolved issues. ECF No. 46.

The parties' failure to address relevance and proportionality undermines the aim of the 2015 amendments to the discovery rules, which "encourag[ed] judges to be more aggressive in identifying and discouraging discovery overuse." Rule 26, Advisory Committee Notes (2015). The amendment "ensures that the parties and courts share the 'collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021) (citing Rule 26 advisory committee's notes (2015)). The *In Helena Agri-Enterprises* court emphasized that the 2015 amendment was intended to rein in the exorbitant costs, protracted time, and contention that have strained the civil justice system. *Id.* "Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Id.* at 274 (quoting John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary 6 (2015)).

"It is now 'the power—and duty—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds.'" *Id*. (quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 (S.D. Ind. 2016)) (emphasis in original). And the Court may on its own motion limit proposed discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(C)(i).

Under these principles, the Court denies Allstar's motion to compel Encompass to provide more answers to Allstar's interrogatories.

**B.**

In Interrogatories Nos. 3-6, Allstar requested that Encompass detail and explain the rationale for its design process and choices; describe all aesthetic changes it made to the Snuggle Puppy and its packaging "from the time the product was first commercially available" and the reasons for those changes; identify all documents or communications about those changes; and identify three witnesses who are most knowledgeable about the aesthetic choices. ECF No. 46, PageID.1652-1673. Encompass's complaint says that the Snuggle Puppy has been in the marketplace for "more than two decades," while Allstar introduced the Huggie Pup in early

4

2021.  ECF No. 1, PageID.5, 11.  Allstar does not explain the relevance of aesthetic choices and documents from 20 years ago, and common sense supports Encompass's objections that the interrogatories requesting two decades of detail and documents are overbroad and unduly burdensome. *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743-44 (8th Cir. 2018) (finding that court may rely on common sense to determine that discovery requests are unduly burdensome).

And Encompass *has* answered Allstar's interrogatories, and supplemented them twice, including by specifying business records that address the processes and rationale for its design choices, and the reason for changes to the aesthetic appearance of the Snuggle Puppy and its packaging.  ECF No. 46, PageID.1652-1673; Fed. R. Civ. P. 33(d) (permitting responding parties to specify business records with "sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.").

Encompass explained, for example:

> The overall appearance of the Snuggle Puppy Product, including a stuffed toy in the shape of a puppy with a flat back with two floppy ears, two closed eyes on the front of the face with arched eyebrows on top, a large oval nose on the front of the snout, and a short tail extending from the rear of the dog was chosen such that its combination of features provide a unique ornamental appearance.

5

ECF No. 46, PageID.1654. Encompass modified Snuggle Puppy's eyes, eyebrows, and eyelashes "to enhance the visual characteristics and overall appearance of the product." *Id*. None of the "features serve a functional purpose." *Id.* Encompass identified the people who were mainly involved in the design process; Allstar can depose them. *Id.*

Allstar would be aided by the business records Encompass provided with communications about the design process when it deposes Encompass's witnesses. ECF No. 36-3; ECF No. 36-4; ECF No. 36-5; ECF No. 36-6. For example, comments on photographs of Snuggle Puppy designs explained the reasons for many design features. ECF No. 36-3, PageID.1304, 1330. Other photos showed different iterations of the Snuggle Puppy packaging. *Id*., PageID.1294-1296. A document Encompass produced details the objectives of the "snuggle puppy re-brand." ECF No. 36-6, PageID.1517. The Court finds improper Allstar's request that Encompass summarize information that Allstar can gather from the submitted business records. See *Noakes v. Case W. Rsrv. Univ.*, No. 1:21-CV-01776-PAB, 2022 WL 17811630, at *7–8 (N.D. Ohio Dec. 19, 2022).

Allstar argued at the hearing that some rationale for design features is not described in Encompass's documents. For example, there is no

explanation why Encompass employees chose blue packaging. Allstar argues that Encompass must "provide or identify the underlying facts supporting" design choices. ECF No. 46, PageID.1660. Encompass's attorney said at the hearing that the decisionmakers simply liked the blue color. Corroborating that claim, a June 2017 email shows Encompass's director of marketing saying in an email, "1st color scheme is our favorite and we are happy with this direction☺." ECF No. 36-6, PageID.1516. But Allstar's counsel argued that Encompass needed to explain *why* its decisionmakers liked the blue. Although Allstar failed to cite authority showing that Encompass's rationale for liking the color scheme is relevant, the Court infers that Allstar is seeking evidence to address the "aesthetic functionality doctrine." *See Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964 (W.D. Ky. 2017).

Under that doctrine, a product feature is entitled to no trademark protection if the feature is essential to its use or purpose, or if it affects its cost or quality. *Id*. at 997. "A mark may be deemed aesthetically functional if it includes a feature the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id*. (cleaned up). "For example, this Court has written that competitors might be free to copy the color of a medical pill where that color serves to identify the kind of

medication (e.g., a type of blood medicine) in addition to its source." *Qualitex Co. v. Jacobson Prod. Co*., 514 U.S. 159, 169 (1995). But "[w]hen a color serves as a mark, normally alternative colors will likely be available for similar use by others." *Id.* at 168.

To determine whether a feature is aesthetically functional, courts apply the comparable alternatives and effective competition tests. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 280 F.3d 619, 642 (6th Cir. 2002) (cleaned up). The comparable alternatives test addresses "whether trade-dress protection of certain features would nevertheless leave a variety of comparable alternative features that competitors may use to compete in the market. If such alternatives do not exist, the feature is functional; but if such alternatives do exist, then the feature is not functional." *Id*. (cleaned up). The question under the effective competition test is "whether trade dress protection for a product's feature would hinder the ability of another manufacturer to compete effectively in the market for the product. If such hinderance is probable, then the feature is functional and unsuitable for protection." *Id*. (cleaned up).

In *Deere*, the court rejected the defendant's argument that the color scheme used for Deere equipment was aesthetically functional because

farmers preferred that their equipment match their Deere tractors. 239 F. Supp. 3d at 998-1003. The defendant failed to show that no other color scheme would complement Deere tractors. *Id.* at 1001. And the only disadvantage the defendant claimed was "tied to the reputation and association with John Deere." *Id*. at 1002 (cleaned up).

Encompass said in answer to Allstar's interrogatories that the features of the Snuggle Puppy and its packaging are nonfunctional. Allstar makes no argument otherwise. It made no claim that comparable features that would allow others to compete with the Snuggle Puppy in the marketplace do not exist, or that other manufactures would suffer a disadvantage not tied to the Snuggle Puppy's reputation. And as it relates to Allstar's specific request for more evidence about Encompass's choice of the color blue, Allstar makes no claim to rebut the normal assumption that alternative colors are available to others. *Qualitex*, 514 U.S. at 168.

The Court here does not decide the merits of Allstar's aesthetic functionality defense. Rather, applying the proportionality factors, the Court finds that Allstar has not shown that the likely benefit of requiring Encompass to again supplement its answers to Interrogatories Nos. 3-6 justifies the burden and expense of having Encompass identify reasons why it chose its color scheme and other aesthetic features. Rule 26(b)(1).

And the Court applies Rule 26(b)(2) to find that a more convenient method for discovering additional details about Encompass's choices would be to depose the designers of the Snuggle Puppy and its packaging who Encompass identified.

**C.**

Allstar's Interrogatory No. 12 asks Encompass to "[d]escribe the complete legal and factual bases for" its contention "that the Asserted Copyrighted Works are copyrightable, specifically identifying which aspects of are subject to copyright protection and their purported authors or creators." ECF No. 46, PageID.1673. Encompass responded by citing its copyrights and describing why its registered work is subject to copyright protection. *Id.*, PageID.1674. In answer to Interrogatory No. 15, Encompass detailed the features of the Huggie Pup that Encompass claims violate its copyrights. *Id.*, PageID.1675. The Court agrees with Encompass that it "has sufficiently identified the scope of its asserted copyrightable works for purposes of Fed. R. Civ. P. 33." *Id.*, PageID.1677.

### III. Motion for Protective Order.

Allstar moved for the Court to grant it a protective order and permit it to designate about 580 pages of documents as for attorneys' eyes only (AEO). The Court denies the motion for two reasons.

First, Allstar's motion for protective order relies on documents that were filed under seal without the authorization required by Sixth Circuit authority and local rule. ECF No. 29; ECF No. 30; ECF No. 31; *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016); E.D. Mich. LR 5.3. At the hearing, the Court gave Allstar a choice between striking the exhibits or unsealing them, and Allstar chose to have them stricken.

The Court would have denied Allstar's motion for protective order even if it had properly filed the exhibits. A party may move for a protective order to protect it from "annoyance, embarrassment, oppression, or undue burden." Rule 26(c)(1). The movant bears the burden of showing good cause for a protective order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). To show good cause, the movant must articulate specific facts showing "clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* "Good cause cannot be established upon some general or speculative alleged harm."

*Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, at *3 (E.D. Mich. Aug. 4, 2010).

"An AEO designation, which limits review of documents to only the parties' attorneys and experts, is considered to be the most restrictive (and thus least often justified)" protective order. *Specialty Auto Parts USA, Inc. v. Holley Performance Prod., Inc.*, No. 117CV00147JRWLLK, 2020 WL 1914817, at *8 (W.D. Ky. Apr. 20, 2020) (cleaned up). "AEO designation can be justified upon a specific factual showing that especially sensitive information is at issue or the information is to be provided to a competitor." *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio 2014) (cleaned up). The party moving for AEO designation cannot rely on mere stereotyped and conclusory statements. *Xoran Holdings, LLC v. Luick*, No. 16-13703, 2019 WL 13029920, at *4 (E.D. Mich. May 19, 2019), *objections overruled*, 2019 WL 4735497 (E.D. Mich. Sept. 27, 2019). And the Court must balance Encompass's "need for the information against the potential for harm resulting from disclosure." *Stout*, 298 F.R.D. at 535.

Allstar does not meet its burden of showing that the 580 pages of documents it identified require an ordinary protective order, let alone one that limits review of the documents only to Encompass's attorneys. Allstar's chief executive officer, Scott Boilen, made a declaration with only

12

conclusory allegations of harm. ECF No. 28-5. He said, "I understand that these documents generally relate to product and packaging research and development, advertising research and development, and internal business strategies. This is the type of information that Allstar guards and protects to prevent it from getting into the hands of its competitors, including Encompass." *Id.*, PageID.426-427. Boilen contends that information about its advertising would allow a competitor to undercut it "in every aspect of its business." *Id*. at 427. He asserts that Allstar's communications about the development of the designs of its products would allow Encompass to identify and poach its suppliers. *Id.* at 427-428. These generalized and conclusory allegations could be made by any party in cases between direct competitors and is woefully insufficient to justify Allstar's request for AEO designation of hundreds of documents.

Allstar argued that *Xoran* supported its motion, but that case is distinguishable. Unlike here, the declaration in *Xoran* provided granular details about "the nature of the documents at issue, their competitive value and the efforts taken to maintain their confidentiality." 2019 WL 13029920, at *5. Boilen's declaration provided no granular details about the nature of the hundreds of documents at issue, their competitive value, or the steps Allstar took to maintain the confidentiality of the documents. ECF No. 28-5.

And as compared to the 580 documents Allstar seeks to designate for AEO, *Xoran* involved a "limited subset of documents." 2019 WL 4735497, at *11.

Allstar's effort to restrict hundreds of documents describing its design and marketing processes would harm Encompass. *See Xoran*, 2019 WL 13029920, at *4 ("Because the indiscriminate use of attorneys' eyes only designations can cause harm, courts have declined the designation in the absence of a strong showing of probable competitive harm.") (cleaned up). Allstar said in its motion that allowing Encompass employees access to the documents at issue would expose Allstar's "secret sauce" about how it markets and configures its product. ECF No. 28, PageID.372. Encompass challenges Allstar's description of the documents as especially secret by highlighting some of them in its response brief.[1] ECF No. 35, PageID.1236, 1245-1246, 1248. Emails from October 2020 identify "Snuggle Puppy" in the subject line and a suggestion that Allstar use two

---

[1] Encompass moved to seal its response to Allstar's motion for protective order only because it had to do so under the parties' existing protective order. ECF No. 34, PageID.1184; ECF No. 19, PageID.139. Allstar's reply brief failed to address the burden for sealing the response brief under Rule 5.3 or other law. Thus, the Court denies Encompass's motion to seal the response brief and unseals it.

Snuggle Puppy YouTube videos for Allstar's website.[2]  *Id*., PageID.1252.  Allstar described these emails as financial documents.  *Id*.; ECF No. 28, PageID.401-402.

    The Court agrees with Encompass that Allstar has exaggerated the sensitivity of its documents.  In fact, the documents that Allstar seeks to designate as AEO are the same type that Encompass disclosed in answer to Allstar's interrogatories.  ECF No. 36-3; ECF No. 36-4; ECF No. 36-5; ECF No. 36-6.

    At the hearing, the Court noted that it did not discern any "secret sauce" from its review of the documents.  Allstar's counsel responded that the value of the documents would elude the attorneys on the case but that the parties' principals would understand their value.  In other words, Allstar asks the Court to prohibit review of the documents by the only members of the Encompass litigation team who would fully understand their relevance.  Thus, granting Allstar's request would harm Encompass's ability to prosecute its case, and that harm is not justified by Boilen's generalized and conclusory declaration.  *See Stout*, 298 F.R.D. at 535 (requiring a court

---

[2] The YouTube video identified the email chain are https://www.youtube.com/watch?v=--DsAHHYpaw and https://www.youtube.com/watch?v=5Ypsumb-Mao

to balance the requesting party's "need for the information against the potential for harm resulting from disclosure.").

## IV. Conclusion

The Court **DENIES** Allstar's motion to compel (ECF No. 26); **DENIES** Allstar's motion for protective order (ECF No. 28); **STRIKES** Allstar's exhibits filed under seal (ECF No. 29; ECF No. 30; ECF No. 31); and **DENIES** Encompass's motion to seal its response brief and **UNSEALS** that brief (ECF No. 34; ECF No. 35).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: January 13, 2023

### NOTICE TO PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this order, any party may file objections with the assigned district judge. Fed. R. Civ. P. 72(a). The district judge may sustain an objection only if the order is clearly erroneous or contrary to law. 28 U.S.C. § 636. **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."** E.D. Mich. LR 72.2.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 13, 2023.

s/Marlena Williams<br>
MARLENA WILLIAMS<br>
Case Manager